ALBERT A. GRIFFIN v. THE GRATWICK, SMITH & FRYER LUMBER COMPANY.

*Sale—Completion of contract—Conversion.*

The defendant placed its mark upon a quantity of logs belonging to the plaintiff. Negotiations were had looking to the purchase of the logs by the defendant, but a sale was not consummated, and plaintiff sued defendant for the value of the logs. And it is held that the court erred in directing a verdict for the defendant upon the ground that plaintiff's remedy was an action of *assumpsit*, and not of tort,—it appearing that the minds of the parties never met so as to effect a contract of sale of the logs; and that plaintiff was entitled to have the case submitted to the jury in accordance with his theory that the defendant, by marking the logs, had converted them.

Error to Wayne. (Reilly, J.) Argued October 3, 1893. Decided November 24, 1893.

Trover. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*George W. Radford (Edward A. Barnes,* of counsel), for appellant.

*Elbridge F. Bacon,* for defendant.

GRANT, J. Plaintiff, in the winter of 1890, cut, hauled, and banked upon a stream some pine timber of which he was the owner. Most of the logs were piled in four rollways, and the rest were on skidways along the creek. Before the time for drawing, the defendant had marked the most, if not all, of the logs with its mark, using paint and a stamping iron. The evidence on the part of defendant tends to show that this was done by mistake. Plaintiff, ascertaining that his logs had been thus marked, on April 20, 1891, informed one Mr. Manning, the defendant's agent, of the fact, and told him that he wanted defendant to take the logs, and pay for them, stating his price to be $4 for the Norway and $6.50 for the white pine. He testified that Mr. Manning told him that he would go the next day and look them over, and, if they were as he claimed, he would take them. Mr. Manning's testimony is substantially the same. He testified that his purpose in going the next day was to see if he would take them. Mr. Manning did not go as he promised to, and nothing more passed between plaintiff and defendant until May 11, 1891, when defendant, through another agent, Mr. French, wrote plaintiff the following letter:

"Mr. Manning says he will take the logs at the price you mentioned, and has sent a man to scale them. Fires have been very bad in that section of the country, and may have damaged your logs some."

May 18, plaintiff replied as follows:

"Must I make a draft on the company in Detroit for

those logs, or will you attend to it? I want to be fair in this matter, and want to be used as well. This matter should have been settled weeks ago. You marked the logs, preventing me from selling them. Now, I won't delay this matter any longer."

Accompanying this letter was a statement of the amount of logs, and their value, according to the price above stated, $956.55. To this letter defendant replied, May 19, as follows:

"Yours received. Soon as we receive the scale of logs from man now scaling them will report same to you."

May 28, plaintiff wrote to defendant the following letter at Detroit:

"I banked this last winter 103,587 feet choice Norway and 83,413 feet of choice white pine on north-west quarter of south-west quarter of section 3, town 28 north, of range 1, and, when I sent a man up this spring to see about marking and putting them in the river, he found them all marked with your mark. I went to see your man, Mr. Manning, at Otsego Lake, about it, and offered to sell him the logs at the same price he was paying Messrs. Salling, Hansen & Co. for them, as, of course, I could not sell them to any one else, as they were marked. He said he would attend to it at once. That was about the 1st of April. I have written him since, but he doesn't answer. Now, I would like to have you see why he don't. I understand Mr. Hansen is getting only $4 for the Norway and $6.50 for the white pine. I think my logs are worth more money, but I want to be fair in the matter, so will take the same price."

To this defendant replied, May 29:

"Yours of 28th received. The matter you refer to is something we know nothing about here, but we will endeavor to find out all about it, and report to you early as possible."

June 1, defendant again wrote:

"We have a letter from our people at Otsego Lake, saying they have written you repeatedly about the matter referred to in yours of 28th ult. They say, further, that part of the logs were burned, but give the following scale:

516 pieces of white pine, 54,165 feet; 623 pieces Norway, 60,146 feet. This could not have been gotten any sooner, as the logs were on skidways, and could not be scaled until they were rolled into the stream. We understand that we owe you for the above at $6.50 and $4."

June 2, plaintiff replied:

"Your letter just received. When they reported the scale to me they didn't say anything about logs being burnt. Now, I had those logs sold to Oscoda Salt & Lumber Co., H. M. Loud & Son, and sent a man as soon as the snow was off here to see if it was off the logs, so that they could be scaled, and found that your men had marked them all, and, I believe, scaled them. I went to Otsego Lake at once; saw Mr. Manning. He promised to go the next day and scale the logs, and pay for them, and, if he had done so, they would not of been burnt. · Now, if they have been burnt it is his fault, and not mine; and I can't see any reason why he should report the logs short, as it is his fault, and not mine. Now, in my letter yesterday I sent bill for just what logs I can prove that he marked, or, rather, was marked with your mark. Hoping you will see this as it is, and send me check for amount."

Other correspondence followed, which is not material. Defendant refused to pay, except on its own scale, after deducting the burnt timber. This the plaintiff refused to accept, and instituted this suit. The declaration contains five counts; one in trover, two for the wrongful marking of the logs, one based upon section 2054, and one based upon section 2060, How. Stat. The court directed a verdict for the defendant, upon the ground that plaintiff's remedy was an action of *assumpsit*, and not of tort.

We think the court was in error. Clearly, no contract was made before the letter of May 11 was written. Manning, according to his own evidence, did not, in the conversation with plaintiff, agree to buy the logs, for he says his purpose in agreeing to go the next day was to see if he would take them. This letter was not an acceptance of the offer of plaintiff, but was qualified by the statement that the logs had been damaged by fire, and the clear

inference is that defendant did not intend to take those which had been destroyed. The subsequent correspondence clearly shows this. The plaintiff declined to accept this, and claimed that his offer included all the logs. The minds of the parties, therefore, never met, and no contract of sale was effected. The plaintiff was entitled to have the case submitted to the jury in accordance with his theory that defendant, by marking the logs, had converted them.

Judgment reversed, and new trial ordered.

The other Justices concurred.